UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA,

  Plaintiff,

v.             CASE NO.: 1:07-CR-021-SPM

ANGEL GARCIA-BERCOVICH,
LUIS ANTONIO BUJANDA-CALLEJAS and
LUIS MATA-MORENO,

  Defendants.

_____/

## ORDER DENYING MOTION TO SUPPRESS

**THIS CAUSE** comes before the Court upon Defendant Garcia-Bercovich's "Motion to Suppress Physical Evidence and Motion for Evidentiary Hearing" (doc. 50) and the "Government's Response to Defendant's Motion to Suppress" (doc. 61). The Defendant contends that his Fourth Amendment rights were violated by the warrantless search of a package delivered to a cargo facility. The Government responds that the Fourth Amendment only regulates state action and the package in this case was opened by a private party. Additionally, the Government denies the use of coercion to solicit the Defendant's consent. The Court held a suppression hearing on October 10, 2007. For the reasons discussed below, the Defendant's motion is denied.

**FACTS**

On June 23, 2007, Central Transport shipping company ("CT")  received a 1100-pound package consisting of multiple boxes addressed to the Defendant.  CT employees attempted to deliver the package to the address listed on the label.  After numerous attempts, they were unable to locate the exact address where the package was to be delivered.  They called the two phone numbers listed on the shipping label.  They also contacted the company who shipped the package to CT.  An employee of that company said that she could not locate the sender of the package, either.

A CT employee noticed a strange odor coming from the package.  The shipping label indicated that there were heating materials inside.   But the CT employee was concerned that the smell was not consistent with heating materials.  The CT employee then decided to open one of the boxes in an attempt to locate more information regarding the intended recipient and to investigate its contents.

 In the first brown box that the employee opened, he saw a nondescript white box.  Inside of that white box was a package wrapped in green cellophane.  The CT employee then cut a slit in the package in order to determine what was inside.  After becoming suspicious that this package contained narcotics, the CT employee contacted the police.

Officer Charles Ward and Lieutenant Bart Knowles arrived on the scene and visually inspected the package.   Officer Ward testified that he inserted his fingers inside of the slit made by the CT employee and "manipulated the slit."  Officer Ward

testified that after looking at and smelling the green package, both officers concluded that it contained marijuana. Officer Ward said that he "manipulated the slit" in order to touch the contents and further verify what he and Lieutenant Knowles had already concluded–that the boxes contained marijuana. The police then decided that they would need to take the boxes back to the police station for inventory and destruction. Prior to doing so, Officer Ward removed another box from the middle of the package and opened it. He testified that the purpose of this inspection was to ensure that there were no booby traps inside the package that might injure the officer during the transport to the police station. Upon concluding that there were no traps in the box, Officer Ward began loading the boxes into police vehicles to transport them to the police station.

The next day, June 27, 2007, Officer Ward received a telephone call from the CT employee. The employee told the officer that the Defendant had arrived at the facility to pick up the package. Officer Ward instructed the employee to tell the Defendant that he could return later in the day to claim the package. Officer Ward then went to the police station, repackaged all of the marijuana in the same form that it had been in when it arrived at CT, and returned the package to the CT loading dock.

When the Defendant arrived later in the day to claim his package, Officer Ward, posing as an employee of CT, met the Defendant on the loading dock and told the Defendant that he would help him find his package. Officer Ward feigned confusion as to the location of the Defendant's package. Defendant assisted Officer

Ward in his search by pointing out the package that contained the marijuana. Officer Ward and another undercover officer helped the Defendant put the package in the Defendant's truck and then arrested him. At the time of the arrest, Officer Ward was joined by four other uniformed officers. A scuffle ensued, but eventually the Defendant was subdued and arrested. Officer Ward read the Defendant his Miranda warnings and then asked the Defendant if he agreed to speak to the police. The Defendant said yes. The officer escorted the Defendant to a room at CT in order to conduct an interview.

Officer Ward and Lieutenant Knowles both testified that there was nothing abnormal in Defendant's behavior at the loading dock. The Defendant did not seem impaired or confused about what the officers were saying to him. Two minutes elapsed between Officer Ward announcing that the Defendant was under arrest and the beginning of the interview. Officer Ward testified that the Defendant said that he understood English and that he understood his rights and was willing to talk to them. Detective Hunter asked the Defendant if the officers could search the package. The Defendant said yes. Officer Ward denied that any threats or promises were made to the Defendant during this interview. Officer Ward also testified that there were no weapons drawn during this interview. Lieutenant Knowles did testify that there were initially weapons drawn when the officers announced their presence on the loading dock, but once the scuffling began, all weapons were put away.

**ANALYSIS**

*Warrarantless Search and Seizure*

The Defendant concedes that a search by a private person does not implicate the Fourth Amendment. See Coolidge v. New Hampshire, 403 U.S. 443 (1971)(holding that a private individual may permissibly conduct a warrantless search that would be deemed unconstitutional if similarly effectuated by the government). The Government established, through the testimony of multiple police officers, that the initial slit in Defendant's package was made by a CT employee. The primary issue, therefore, is whether the actions of the officers on the scene impermissibly and illegally expanded the limited search done by this private party.

To support his position, the Defendant relies very heavily on Walter v. United States, 447 U.S. 649 (1980). In Walter, a package was delivered to a private company. Employees of this company opened the package. Inside the package there were individual boxes. The outside markings on the interior boxes raised suspicions that illegal pornographic movies would be found inside. When the employees opened the package, they were unable to determine whether the movies were in fact illegal. But thinking that the package looked suspicious, the employee contacted law enforcement. Agents arrived at the scene, confiscated the boxes, and, without first obtaining a warrant, viewed one of the movies on a projector in order to ascertain its contents. In Walter, the Court determined that viewing the films constituted a "search" that violated the Defendant's reasonable expectation of privacy. The turning point in that case was the fact that "the agents' reason for

5

viewing the films was to determine whether their owner was guilty of a federal offense". Walter, 447 U.S. at 654. The Court went on to say that

> To be sure, the labels on the film boxes gave them probable cause to believe that the films were obscene and that their shipment in interstate commerce had offended the federal criminal code. But the labels were not sufficient to support a conviction and were not mentioned in the indictment. Further investigation – that is to say, a search of the contents of the films – was necessary in order to obtain the evidence which was to be used at trial.

Id.

In the case at bar, the officer who "manipulated the package" already knew that the package contained marijuana. The officers at the scene were able to see and smell the marijuana that had been exposed as a result of the CT employee's search. Unlike the viewing of the film in Walter, the manipulation done by Officer Ward was not an expansion of this search. Officer Ward and Lieutenant Knowles did not have to do any "further investigation" of the package "in order to obtain evidence which [would] be used at trial."

The seizure of the marijuana and the transport of the marijuana to the police station for inventory and destruction was justified by the "plain view doctrine," which allows officers to seize any contraband that they observe within plain view. The plain view doctrine "serves to supplement the prior justification [of intrusion] – whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused -- and permits the warrantless seizure" of contraband.

Coolidge v. N.H., 403 U.S. 443, 466 (1971).  It was "immediately apparent" to Officer Ward and Lieutenant Knowles that they had "evidence before them". Id. Furthermore, "[i]f an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy." Horton v. Cal., 496 U.S. 128, 133 (1990).  Therefore, the seizure of the marijuana from Central Transport did not trigger any Fourth Amendment protection.

The conclusion that Officer Ward's actions did not further the private party search is supported by the Court in Walter.  In fact, the Supreme Court specifically anticipated circumstances such as we have here.

> Even though some circumstances – for example, if the results of the private search are in plain view when materials are turned over to the Government – may justify the Government's re-examination of the materials, surely the Government may not exceed the scope of the private search unless it has the right to make an independent search.

Walter v. United States, 447 U.S. 649, 657 (1980).

When the officers arrived at CT, the marijuana was already in plain view.  As the Defendant states in his motion, it is true that when the CT employee opened the package, he became suspicious that the contents were marijuana.  But when the officers arrived, the CT employee's suspicions were confirmed.  Using their years of experience and training in narcotics, the officers were able to confirm that the package contained marijuana just by seeing it and smelling it.  Officer Ward's "manipulation" of the slit in order to feel the contents was not a search.  It was merely a "reexamination of the materials" that did not exceed the scope of the

7

search conducted by the CT employee before the officers arrived.

The Defendant argues that the CT employee was only "suspicious" that the boxes contained contraband and that police officers cannot conduct a search on the basis of suspicion. This argument fails on two counts. The Fourth Amendment does not restrict a private party from opening a package on the basis of mere suspicion. For law enforcement, it must be immediately apparent to the officers that what they saw in plain view was an illegal item. Law enforcement was confident in their conclusion that the contents of the package contained marijuana. Furthermore, the manipulation of the slit did not constitute a search. The manipulation was only a re-examination of the contents in order to confirm what their eyes and nose already knew; a legitimate purpose authorized by the Supreme Court in United States v. Jacobsen, 466 U.S. 109, 126 (1984)(holding that upon seeing a substance that looked like cocaine, a police officer conducting "a chemical test that merely discloses whether or not a particular substance is cocaine" is not an activity that "compromises any legitimate interest in privacy"). Therefore, the "manipulation" in this case is neither a search nor an expansion of the scope of the search done by the CT employee.

The plain view justification authorizing the seizure of the first box is the same justification for the opening of the second box. This action did not trigger the Fourth Amendment because it "did not infringe any constitutionally protected privacy interest that had not already been frustrated as a result of private conduct." Jacobsen, 466 U.S. at 126. All of these boxes comprised one unified package–all

the boxes were the same size, shape and color; all of the boxes were wrapped together with plastic wrap; and there was only one shipping label for the entire package. It was reasonable for the officers to view the boxes as one package conclude that they all contained the same thing–marijuana. From that, it was reasonable for the officers to then conclude that they had a right to seize and destroy the entire package. There was no need for an independent justification to open each box. It was all one package. It was all contraband. Therefore, once the officers concluded that the package contained contraband, they were legally entitled to search and seize the entire package.

> It is obvious that the privacy interest in the contents of a container diminishes with respect to a container that law enforcement authorities have already lawfully opened and found to contain illicit drugs. No protected privacy interest remains in contraband in a container once government officers lawfully have opened that container and identified its contents as illegal.

Ill. v. Andreas, 463 U.S. 765, 771 (1983).

### *Abandonment*

During the course of the suppression hearing, the parties made reference to the issue of abandonment. The Government elicited testimony about the status of the package as abandoned. The Defendant proffered information regarding the CT policy regarding abandonment. However, this argument was not fleshed out in the motions filed by the parties. The Court does not construe the Government's references as a legal argument for abandonment, but as a reference to the

colloquial use of the package being undeliverable to the addressee.

*Consent*

The issue of consent was raised by both parties to this case. However, the parties were unclear, both in their motions and during the hearing, about how this issue applies to the marijuana that is the subject of this suppression motion. Furthermore, given the Court's ruling that there was no Fourth Amendment search of the boxes on the loading dock, the Defendant's subsequent consent and cooperation is not an issue that the Court is compelled to address.

**CONCLUSION**

The initial search of the package by the CT employee was a private party search that did not implicate the Fourth Amendment. The subsequent re-investigation of the package by the police officers was not an unlawful expansion of the private search. Furthermore, the seizure of the marijuana was justified by the plain view doctrine. The Defendant's Fourth Amendment rights were not violated.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The motion to dismiss is hereby *denied*.
2. Trial remains set for **Tuesday, November 13, 2007.**

**DONE AND ORDERED** this thirty-first day of October, 2007.

*s/ Stephan P. Mickle*
Stephan P. Mickle
United States District Judge